Nos. 21-50048; 21-50084

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

IMAAD SHAH ZUBERI,

*Defendant-Appellant.*

*Appeal from the United States District Court for the Central District of
California, Case Nos. 2:19-cr-00642-VAP; 2:20-cr-00155-VAP
The Honorable Virginia A. Phillips, United States District Judge*

**UNSEALED PORTION OF APPELLANT'S OPENING BRIEF**

Timothy A. Scott
Marcus S. Bourassa
MCKENZIE SCOTT, PC
1350 Columbia Street, Ste. 600
San Diego, CA 92101
tscott@mckenziescott.com
mbourassa@mckenziescott.com

*Counsel for Appellant*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ iii

JURISDICTIONAL STATEMENT AND CUSTODY STATUS ............... 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ...................... 2

STATEMENT OF THE CASE ............................................................ 2

    I.    Negotiated Plea Agreements .......................................... 2

    II.   Consolidation of Both Cases ......................................... 4

    III.  Sentencing ................................................................. 4

    IV.  The Government's Simultaneous Grant of Deferred Prosecution to Defendants Accused of Strikingly Similar Conduct .......................... 5

    V.   Relevant Timeline ....................................................... 9

SUMMARY OF THE ARGUMENT ........................................... 10

REVIEWABILITY AND STANDARD OF REVIEW ............................ 11

    I.    Zuberi's claim is properly raised on direct appeal ...................... 11

    II.   Zuberi's involuntary-waiver claim is reviewable under the plea agreements' limited appeal waiver ..................................... 12

    III.  Standard of review .................................................. 12

ARGUMENT ........................................................... 13

I.    Because Zuberi Was Denied His Sixth Amendment Right to
Conflict-Free Counsel, His Pleas Were Involuntary and Must Be Set
Aside ................................................................ 13

    A.    Zuberi was denied his Sixth Amendment right to conflict-free
    counsel .......................................................... 13

    B.    Davis's actual conflict of interest rendered Zuberi's pleas
    involuntary ...................................................... 16

II.    If the Obstruction Count Remains, Remand to a Different Judge
For Resentencing Is Required ........................................ 21

CONCLUSION ........................................................ 22

# TABLE OF AUTHORITIES

## Cases

*Brady v. United States*, 397 U.S. 742 (1970) ............................... 12, 17, 21

*Cuyler v. Sullivan*, 446 U.S. 335 (1980) ............................................. 13, 20

*Holloway v. Arkansas*, 435 U.S. 475 (1978) ........................... 12, 14, 18, 20

*Lewis v. Mayle*, 391 F.3d 989 (9th Cir. 2004) ......................................... 10

*Lockhart v. Terhune*, 250 F.3d 1223 (9th Cir. 2001) .............................. 13

*Mannhalt v. Reed*, 847 F.2d 576 (9th Cir. 1988) .................................... 16

*Mickens v. Taylor*, 535 U.S. 162 (2002) ................................. 13, 14, 18, 20

*Missouri v. Frye*, 466 U.S. 134 (2012) .................................................... 20

*North Carolina v. Alford*, 400 U.S. 25 (1970) ......................................... 17

*United States v. Alcala-Sanchez*, 666 F.3d 571 (9th Cir. 2012) ............ 22

*United States v. Benlian,* 63 F.3d 824 (9th Cir. 1995) ........................... 12

*United States v. Camarillo-Tello*, 236 F.3d 1024 (9th Cir. 2001) ........... 22

*United States v. Davis*, 428 F.3d 802 (9th Cir. 2005) ............................ 18

*United States v. Davis*, 854 F.3d 601 (9th Cir. 2017) ............................ 21

*United States v. Ortega-Ascanio*, 376 F.3d 879 (9th Cir. 2004) ............. 12

*United States v. Ruiz-Alvarez*, 211 F.3d 1181 (9th Cir. 2000) ............... 21

iii

# TABLE OF AUTHORITIES (continued)

*United States v. Vroman*, 997 F.2d 627 (9th Cir. 1993)...........................11

*United States v. Walter-Eze*, 869 F.3d 891 (9th Cir. 2017).........13, 14, 18

*Wood v. Georgia*, 450 U.S. 261 (1981)................................................10, 13

## Statutes

18 U.S.C. § 1512.........................................................................................1

18 U.S.C. § 3553.........................................................................................5

22 U.S.C. § 612...........................................................................................1

22 U.S.C. § 618...........................................................................................1

26 U.S.C. § 7201.........................................................................................1

52 U.S.C. §§ 30116, 3018, 30121, 30122, 30109........................................1

## Federal Rules

Fed. R. Crim. P. 11 .............................................................................11, 17

## Other Authorities

ABA Criminal Justice Standards for the Defense Function; *Standard 4-6.3(e) Plea Agreements and Other Negotiated Dispositions* ................19

The State Bar of California, *Rules of Professional Conduct, Rule 1.7(b) Conflict of Interest: Current Clients* ......................................................15

## JURISDICTIONAL STATEMENT AND CUSTODY STATUS

Appellant Zuberi appeals his convictions and sentences for violations of the Foreign Agents Registration Act, 22 U.S.C. §§ 612, 618(a)(2); Tax Evasion, 26 U.S.C. § 7201; making Illegal Campaign Contributions, 52 U.S.C. §§ 30116, 3018, 30121, 30122, 30109(d)(1); and Obstruction of Justice, 18 U.S.C. § 1512(c). The district court had criminal jurisdiction under 18 U.S.C. § 3231.

Zuberi was sentenced on February 18, 2021, and the court entered final judgment. 1-ER-2, -7. This Court has jurisdiction to review the final judgment, 28 U.S.C. § 1291, and the legality of the sentence, 18 U.S.C. § 3742.

Judgment was entered on February 23, 2021. 3-ER-452 and 3-ER-472-473. Timely notices of appeal were filed on March 4 and on April 8, 2021. 3-ER-420-425, 3-ER-418-419, and 3-ER-412-417. This Court has jurisdiction under 28 U.S.C. § 1291.

Zuberi is currently in BOP custody with a projected release date of October 16, 2031.

1

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

Whether Zuberi's Sixth Amendment right to conflict-free counsel was violated when his attorney withheld material information that would have affected Zuberi's decision to plead guilty (or to continue with his guilty plea). Protecting the interests of a different client, Zuberi's attorney failed to disclose that the same prosecutorial unit was granting deferred-prosecution agreements to others for very similar conduct while demanding a twelve-year guideline range for Zuberi.

## STATEMENT OF THE CASE

### I.  Negotiated Plea Agreements

On November 22, 2019, Zuberi pled guilty, under a plea agreement with the U.S. Attorney's Office for the Central District of California, to one count each of violating the Foreign Agents Registration Act (FARA), Tax Evasion, and Illegal Campaign Contributions. 2-ER-256-298 and 2-ER-299-365. The agreed factual basis stated that:

1.     Zuberi conducted a lobbying and public relations effort in 2013–14 for the government of Sri Lanka without registering as required under FARA, and made and caused to be made false statements and material omissions in FARA registration filings [2-ER-360-363];

2.      Zuberi filed false returns and underpaid between $3.5 million and $9.5 million in income tax for the tax years 2012-2015 [2-ER-363-364]; and

3.      Zuberi made campaign contributions in the names of others, reimbursed contributions made by others, and received reimbursements from others for contributions he made, in violation of the Federal Election Campaign Act (FECA). From 2012-2016, the illegal contributions totaled between $250,000 and $1,500,000 [2-ER-364].

On June 30, 2020, Zuberi pled guilty, under a plea agreement with the U.S. Attorney's Office for the Southern District of New York, to one count of Obstruction of Justice. 2-ER-206-236 and 2-ER-237-255. The factual basis stated that Zuberi bundled a donor's $50,000 donation to the 2017 Presidential Inaugural Committee into a $900,000 donation in the name of an entity Zuberi controlled, and that after the donor told Zuberi the donation was under federal investigation and requested a refund, Zuberi backdated the refund check to make it appear he had returned the funds before learning of the investigation. 2-ER-243-244 ¶9.

## II.    Consolidation of Both Cases

At the plea hearing on the SDNY obstruction count, the court consolidated the two cases on the government's motion (with defense consent). 2-ER-232-234. The government told the court that the SDNY obstruction conduct was "a subset" of the conduct for which the government sought a guidelines enhancement for obstruction in the CDCA case [2-ER-220] and that "any sentence imposed by the Court as to the New York matter…would result in no effect on the overall Sentencing Guideline sentence," but instead "would be just another contributing factor for the two-level enhancement for obstruction of justice" sought in the California case. 2-ER-233. The parties waived a presentencing report on the SDNY offense, because that conduct was already accounted for in the CDCA presentence report. 2-ER-219-220.

## III.    Sentencing

The plea agreement specified Guidelines offense levels of at least 24 for the tax count and 22 for the campaign contributions count [2-ER-309 at ¶20], and reserved the government's right to argue for an additional six points for each [2-ER-310; *see id*. ¶22]. Adding another two points for multiple counts [2-ER-310; *id*. ¶21; U.S.S.G. § 3D1.2(d)], the agreement called for an adjusted offense level of up to 32 and a

Guidelines range of up to 121-151 months.

In its brief and at sentencing, the government argued such a harsh

sentence was necessary because:

> Clandestine foreign efforts to subvert U.S. democratic processes in recent years have caused a significant portion of the body politic to lose faith in our public institutions.... A sentence within the guideline range is necessary to deter other would-be FARA and FECA offenders from compromising our elections and institutions with foreign cash.

2-ER-188; *see also* 2-ER-193 ("a message should be sent to others" in

order "to deter would-be FARA and FECA offenders from corrupting the

fabric of our democracy in exchange for foreign cash").

Considering the non-Guidelines FARA offense and the 18 U.S.C.

§ 3553(a) factors, the Court sentenced Zuberi to 144 months. 1-ER-3 and

1-ER-8.

## IV. The Government's Simultaneous Grant of Deferred Prosecution to Defendants Accused of Strikingly Similar Conduct

What the government *did not* tell Zuberi—or the court—was that

its simultaneous no-conviction resolutions of other, strikingly analogous

cases were utterly at odds with its sentencing arguments against Zuberi.

Two weeks after it signed Zuberi's plea agreement, and two days

before docketing it, the same Public Corruption and Civil Rights Section entered a secret a deferred-prosecution agreement with another "would-be FECA offender" charged with "compromising our elections and institutions with foreign cash."[1] The day after it submitted the above-quoted sentencing argument to the court in Zuberi's case, the Public Corruption and Civil Rights Section also granted deferred prosecution to a second "FECA offender" charged with the same conduct.[2] And two weeks after Zuberi's sentencing, the same Section granted deferred prosecution to a third co-schemer.[3] The Chief of the Section headed the

---

[1] *See* USAO Press Release, No. 21-057*, Lebanese-Nigerian Billionaire and Two Associates Resolve Federal Probe into Alleged Violations of Campaign Finance Laws, U.S. Attorney's Office for C.D. of Cal.* (March 31, 2021), at 2-ER-89-91 (announcing Oct. 20, 2019 deferred-prosecution agreement); *United States v. Chagoury*, Deferred-Prosecution Agreement ("DPA") at 2-ER-155-182.

Zuberi has filed an accompanying Request for Judicial Notice regarding the press release and the deferred- and non-prosecution agreements referenced in this brief. Though these materials were discussed in post-sentence briefing concerning release pending appeal, they were not part of the district court record *before* judgment, because the government did not disclose them until six weeks *after* judgment.

[2] *See id.* (announcing Nov. 10, 2020 deferred-prosecution agreement with Joseph Arsan) at 2-ER-89-91; *United States v. Arsan*, DPA at 2-ER-92-115.

[3] *See id.* (announcing March 1, 2021 deferred-prosecution agreement with

prosecution of those three individuals, and also worked on Zuberi's case.[4]

Like Zuberi, these other three "would-be FECA offenders" were charged with "compromising our elections and institutions with foreign cash," by funneling such cash in six-figure amounts into U.S. congressional and presidential campaigns through conduit contributions.[5] Importantly, Arsan's agreement, like Zuberi's, also resolved a multi-year criminal tax investigation.[6] But unlike Zuberi, for whom the government urged more than a decade in prison, these "would-be FECA offenders" received hushed-up agreements freeing them from prosecution.

_____

Joseph Baaklini) at 2-ER-89-91; *United States v. Baaklini*, DPA at 2-ER-116-139.

[4] *See* USAO Press Release at 2-ER-89-91; *Government's Opposition to Defendant's Motion for Release Pending Appeal*, Case No. 2-19-cr-00642-VAP, Docket No. 377 at 2-ER-82-83 (re: AUSA Mack Jenkins); Reporter's Transcript of Video Teleconference Proceedings, *Motion Hearing*, Case No. 2-19-cr-00642-VAP, Docket No. 375 at 2-ER-85-87 (same).

[5] *See* USAO Press Release at 2-ER-89-91; Chagoury DPA at 2-ER-179-182; Arsan DPA at 2-ER-113-115; Baaklini DPA at 2-ER-133-135.

[6] *See* USAO Press Release at 2-ER-89-91; *compare* Arsan DPA at 2-ER-93 ¶2 (resolving "Arsan's tax violations in tax years 2012-2016"), *with* Zuberi Plea Agreement ¶3 (resolving IRS closing agreements for tax years 2012-2015) at 2-ER-301-302.

This was so even though the other defendants' conduct went beyond illegal campaign contributions, to include a direct payment to a sitting Cabinet officer. In a separate transaction, Baaklini, one of the conduits, wrote a $50,000 check to then-U.S. Secretary of Transportation Ray LaHood, ostensibly for "home repairs."[7] The Secretary accepted the money, knowing from whom it really came, and did not disclose it on government ethics forms.[8] Despite allegedly falsely denying the payment to the FBI, then characterizing it as a "loan" whose terms he could not remember and did not repay, Secretary LaHood was not prosecuted.[9]

These other negotiations were happening at the same time as Zuberi's. The first was entered contemporaneously with Zuberi's plea agreement. The second, Arsan's, was entered while Zuberi awaited sentencing. The third was entered two weeks after Zuberi was sentenced. The government kept them all under wraps until its press announcement on March 31, 2021—nearly six weeks after Zuberi's final judgment. 2-

---

[7] *United States v. LaHood*, Non-Prosecution Agreement at 2-ER-140-141.

[8] *See* USAO Press Release at 2-ER-89-91; *United States v. LaHood*, Non-Prosecution Agreement at 2-ER-151-154.

[9] *See id.* at 2-ER-140-154.

ER-89-91.

Despite the government's concealment of these agreements, one person in this case (other than the prosecutors) knew of at least one of them: Zuberi's lawyer, Evan Davis. Davis knew because he was also Joseph Arsan's lawyer.[10] Arsan's deferred-prosecution agreement (hereafter "DPA") was signed November 10, 2020—the day after the same prosecutors' office urged more than a decade in prison for Zuberi to "send a message" to those such as Arsan. 2-ER-105. Despite knowing that Arsan's disposition squarely contradicted the government's rationale for the harsh sentence it demanded for Zuberi, Davis never said a word to his client Zuberi, or to the court that sentenced him.

## V.    Relevant Timeline

- October 6, 2019 – Zuberi signs his CDCA plea agreement (Attorney Evan Davis representing Zuberi); 2-ER-319.

- October 20, 2019 – Chagoury signs DPA; 2-ER-170.

- **November 22, 2019 – Zuberi enters guilty plea in CDCA case** (Attorney Evan Davis representing Zuberi); 2-ER-256-298.

- December 14, 2019 – LaHood signs Non-Prosecution Agreement; 2-ER-148.

- **June 30, 2020 – Zuberi enters guilty plea in SDNY case**

---

[10] *See* Arsan DPA at 2-ER-105.

**(transferred to CDCA)**; 2-ER-206-236.

- November 9, 2020 – Public Corruption Section's sentencing filing in Zuberi's case arguing: "A sentence within the [10-12 year] guideline range is necessary to deter other would-be FARA and FECA offenders from compromising our elections and institutions with foreign cash." 2-ER-188.

- November 10, 2020 – Arsan signs DPA (Attorney Evan Davis representing Arsan); 2-ER-105.

- **February 18, 2021 – Zuberi's sentencing hearing** (Attorney Evan Davis representing Zuberi); 1-ER-13-78.

- March 1, 2021 – Baaklini's DPA signed; 2-ER-130.

- March 31, 2021 – Arsan's DPA filed with the court; 2-ER-92.

- March 31, 2021 – USAO Press Release re: DPAs; 2-ER-89-91.

## SUMMARY OF THE ARGUMENT

The Sixth Amendment guarantees Zuberi "representation that is free from conflicts of interest and the assistance of counsel whose loyalties are not divided." *Lewis v. Mayle*, 391 F.3d 989, 997 (9th Cir. 2004) (citing *Wood v. Georgia*, 450 U.S. 261, 271 (1981)). But here Zuberi was represented by an attorney who—out of loyalty to another current client—did not tell Zuberi that the U.S. Attorney's Office that was prosecuting him and demanding more than ten years in prison was at the same time entering into no-conviction dispositions with other similarly

situated defendants. Had his lawyer told him this, Zuberi would not have pled guilty, or would have moved to withdraw his guilty pleas. Because Zuberi was denied his constitutional right to counsel with undivided loyalties, his pleas were involuntary, and should be set aside.

## REVIEWABILITY AND STANDARD OF REVIEW

### I. Zuberi's claim is properly raised on direct appeal

Zuberi did not learn about the deferred- and non-prosecution agreements, and his counsel's conflict of interest, until the office that prosecuted him issued its press release on March 31, 2021 [2-ER-89-91]. By that time, nearly six weeks after Zuberi had been sentenced on February 18, 2021 [1-ER-12-78], the district court no longer had authority to consider a motion to withdraw Zuberi's guilty pleas. *See* Fed. R. Crim. P. 11(e) ("After the court imposes sentence, the defendant may not withdraw a plea of guilty…."). Because he did not learn of his counsel's conflict of interest until after sentencing, Zuberi had no opportunity to challenge his pleas before judgment.[11]

---

[11] Not only had Zuberi already been sentenced; he had already filed his appeal, thereby divesting the district court's jurisdiction to alter its judgment. *See United States v. Vroman*, 997 F.2d 627, 627 (9th Cir. 1993).

11

After sentencing, under Rule 11(e), the plea "may be set aside only on direct appeal or collateral attack." *Id.*; *see United States v. Ortega-Ascanio*, 376 F.3d 879, 885 (9th Cir. 2004). Zuberi's conflict-based challenge to the voluntariness of his plea is thus properly before this Court on direct appeal.

## II. Zuberi's involuntary-waiver claim is reviewable under the plea agreements' limited appeal waiver

Although Zuberi's plea agreements contain limited waivers of appeal rights, those limited waivers contain a carve-out for challenging the voluntariness of the plea. 2-ER-247 and 2-ER-313. An attorney whose conflict of interest adversely affects his advocacy does not satisfy the Sixth Amendment, *e.g., Holloway*, 435 U.S. at 490, and a plea with such counsel is not knowing or voluntary. *See Brady v. United States*, 397 U.S. 742, 748 (1970). The involuntariness of such a plea is a basis to challenge the plea, under both the law, *id.*, and the limited appeal waiver in Zuberi's plea agreements.

## III. Standard of review

Zuberi's Sixth Amendment claim presents a mixed question of fact and law. This Court reviews his claim *de novo. United States v. Benlian,* 63 F.3d 824, 826 (9th Cir. 1995).

12

# ARGUMENT

## I. Because Zuberi Was Denied His Sixth Amendment Right to Conflict-Free Counsel, His Pleas Were Involuntary and Must Be Set Aside

### A. Zuberi was denied his Sixth Amendment right to conflict-free counsel

"A criminal defendant's Sixth Amendment right to counsel includes the right to be represented by an attorney with undivided loyalty." *Lockhart v. Terhune*, 250 F.3d 1223, 1226 (9th Cir. 2001) (citing *Wood v. Georgia*, 450 U.S. 261, 271 (1981)). "Defense counsel have an ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict of interest arises." *Cuyler v. Sullivan*, 446 U.S. 335, 346 (1980). Where counsel does not alert his client or the court, the client "must demonstrate that an actual conflict of interest adversely affected his lawyer's performance" to obtain relief. *Id.* at 348; *Lockhart*, 250 F.3d at 1230.

"A showing of 'adverse effect' is not the same as showing prejudice." *United States v. Walter-Eze*, 869 F.3d 891, 901 (9th Cir. 2017). Indeed, "a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice." *Mickens v. Taylor*, 535 U.S. 162, 171 (2002). Thus, "a defendant need not 'show [ ]

13

actual harm,' but just 'actual conflict,'" *Walter-Eze*, 869 F.3d at 901, that is, conflict that "adversely affected his counsel's performance." *Mickens*, 535 U.S. at 174. The central question is what the lawyer "finds himself compelled to *refrain* from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process." *Holloway v. Arkansas*, 435 U.S. 475, 490 (1978) (emphasis in original). The right to counsel is violated when the "advocate's conflicting obligations have effectively sealed his lips on crucial matters." *Id.*; *accord Mickens*, 535 U.S. at 168.

Here, Davis's conflicting duty to Arsan "sealed his lips" in this case about the deferred-prosecution agreements.[12] Davis's conflict was simple: Zuberi had an interest in knowing that, at the same time the government was insisting he plead and agree to guidelines calling for a decade or more in prison, the *same section of the same USAO* was granting no-conviction

---

[12] At a minimum, Davis knew of Arsan's agreement—he appears on it. *See* Arsan DPA, 2-ER-105. In fact, he likely knew of all three. Arsan participated personally in reimbursing $150,000 of the $180,000 in illegal foreign contributions at issue in all three deferred prosecutions. *See id.*; 2-ER-113-115; USAO Press Release, 2-ER-89-91. Because those cases were investigated and charged together for the same scheme, Davis likely knew of all three deferred-prosecution agreements (if not from the USAO, then from his client Arsan).

dispositions to foreign nationals also accused under FECA and FARA of funneling foreign cash in six-figure sums into U.S. political campaigns (and, in Arsan's case, resolving a related five-year criminal tax investigation).

Arsan, Davis's other client, had precisely the opposite interest: keeping the DPAs secret. After all, the prosecutors were not revealing them, and Arsan was receiving an enormous benefit from the prosecutors—his freedom from prosecution. He had a powerful interest not to upset that cart. Davis, lawyer to Arsan as well as Zuberi, could not faithfully serve both. He chose to serve Arsan, by staying silent with Zuberi. His advocacy for Zuberi was thereby impaired.

Zuberi and Arsan need not have been codefendants in the same or even related matters for Davis to have a conflict. A lawyer's representation of current clients presents a conflict of interest if her representation to one client is materially limited by her responsibility to another. *See, e.g.,* The State Bar of California, *Rules of Professional Conduct, Rule 1.7(b) Conflict of Interest: Current Clients* (2018) ("[a] lawyer shall not, without informed written consent from each affected client . . . represent a client if there is a significant risk the lawyer's

15

representation of the client will be materially limited by the lawyer's responsibilities to or relationships with another client ....").  Here, Davis exercised complete loyalty to Arsan by keeping his valuable DPA confidential.  That materially limited his representation of Zuberi, from whom he kept valuable material information: that the prosecutor's office was willing to resolve similar accusations against similarly situated defendants with dispositions that would result in no conviction or punishment.[13]  Zuberi would have used that information to evaluate the critical course of action on which Davis represented him: deciding whether to plead (or to seek withdrawal from his plea).  That undisclosed, unconsented, and unwaived conflict is enough.

## B.  Davis's actual conflict of interest rendered Zuberi's pleas involuntary

Zuberi's guilty pleas are constitutionally sound only insofar as they represented "voluntary and intelligent choice[s] among the alternative

---

[13] The government also could have informed Zuberi and the court of the conflict and sought to resolve the issue. *Cf. Mannhalt v. Reed*, 847 F.2d 576, 583-84 (9th Cir. 1988) (finding a conflict-based Sixth Amendment violation and noting prosecution had "ample opportunity" to raise the issue with the trial court so that disqualification or waiver could have been explored).

courses of action" open to him. *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). Here, his conflicted counsel failed to inform him of viable "alternative courses of action" based on the same prosecuting agency's offers to similarly situated defendants. Had Zuberi known of the other resolutions, he would have had alternative courses available to him: (depending on timing) not pleading guilty, negotiating harder based on better information, or moving to withdraw his plea. Because his conflicted lawyer stayed silent about the basis for any of these alternatives, Zuberi's pleas were involuntary, and may be set aside. *See Alford*, 400 U.S. at 31; *Brady*, 397 U.S. at 748.

When Arsan (counseled by Davis) signed his DPA on November 10, 2020 [2-ER-105], Zuberi was still three months away from his February 2021 sentencing. At any time during those three months, Zuberi could have moved to withdraw his guilty plea, for any "fair and just reason." Fed. R. Crim. P. 11(d)(2)(B). The fact that the same prosecutor's office insisted Zuberi plead to guidelines calling for a decade or more in prison, and that such a sentence was necessary to deter "other would-be ... FECA offenders from compromising our elections and institutions with foreign cash," at the same time that it was granting no-conviction, no-prison

17

dispositions to precisely such "FECA offenders," would be a fair and just reason to withdraw. *See United States v. Davis*, 428 F.3d 802, 805 (9th Cir. 2005) ("fair and just" standard is "applied liberally").

Zuberi need not prove such a motion to withdraw would have been successful—that is, he need not show prejudice. *Mickens*, 535 U.S. at 171; *Walter-Eze*, 869 F.3d at 901. Instead, he need only show that his lawyer's representation was impaired—that the lawyer's "lips were sealed" due to the conflict, leading the lawyer not to inform Zuberi of all available options (or the basis for them). *See Holloway*, 435 U.S. at 490; *Mickens*, 535 U.S. at 168. Here, where Davis's staying silent about Arsan's DPA denied Zuberi the ability even to consider the option of seeking withdrawal, Davis's representation of Zuberi was unquestionably adversely affected. Davis, Zuberi's loyal and zealous advocate, was obliged to inform Zuberi of things that would help his cause, and advise him of potential avenues that could improve his position.[14] Instead, because of Davis's conflicting duty to his other (undisclosed) client, his

---

[14] Indeed, Davis certified, both in writing in Zuberi's plea agreement and at Zuberi's plea hearing, that he had thoroughly discussed with Zuberi the charges against him and any potential defenses. *See* 2-ER-319-320; 2-ER-264, 294.

lips remained sealed.

Moreover, while it is certain Davis knew of Arsan's plea agreement when it was signed in November 2020 (in time for Zuberi to move to withdraw for a fair and just reason), it is likely Davis knew earlier, while he was negotiating Zuberi's agreement. The first DPA, by Arsan's principal codefendant, was entered October 20, 2019[15] [2-ER-170]—two weeks after Davis and Zuberi signed Zuberi's agreement [2-ER-319-320], and two days before Zuberi's agreement was filed with the court [2-ER-299]. Because Arsan and his codefendants were investigated and prosecuted together, it is overwhelmingly likely their lawyers knew of the others' negotiations and agreements. *See* USAO Press Release, 2-ER-89-91. Yet Davis's "careful[ ]" and "thorough[ ]" discussion with Zuberi [2-ER-319-320] did not include the fact that while Zuberi's agreement called for guidelines of up to 121-151 months, Arsan's principal was receiving deferred prosecution. *See* ABA Criminal Justice Standards for the Defense Function, *Standard 4-6.3(e) Plea Agreements and Other Negotiated Dispositions* (2017) ("Defense counsel should investigate and

---

[15] *See* USAO Press Release, 2-ER-89-91.

be knowledgeable about sentencing procedures, law, *and alternatives*, collateral consequences and likely outcomes . . . *and advise the client* on these topics *before* permitting the client to enter a negotiated disposition.") (emphasis added). Had Davis "fully and thoroughly" informed Zuberi of everything affecting his options, Zuberi would not have agreed to his plea deal.

It does not matter that comparison of Zuberi to Arsan or his principal would not be a legal defense. The world of plea negotiations is a world of horse-trading, not limited to formal legal merits. *See Missouri v. Frye*, 466 U.S. 134, 144 (2012) ("To a large extent…horse trading [between prosecutor and defense counsel] determines who goes to jail and for how long. That is what plea bargaining is."). Nor does it matter whether such a strategy would have led to a different result. Because assessing the impact of an attorney's conflict in plea negotiations "would be virtually impossible," *Holloway*, 435 U.S. at 490-91, prejudice is presumed. *Mickens*, 535 U.S. at 166-68; *Cuyler*, 446 U.S. at 349.

Because Davis's conflict of interest adversely affected his advocacy, his advocacy did not satisfy the Sixth Amendment. *E.g.*, *Holloway*, 435 U.S. at 490. Zuberi's plea with such counsel was not knowing or

voluntary. *See Brady*, 397 U.S. at 749 & n.6. Zuberi's conviction should be vacated, and his plea set aside.

## II. If the Obstruction Count Remains, Remand to a Different Judge For Resentencing Is Required

Zuberi's conflicted counsel represented him on the CDCA plea agreement and at the change of plea hearing. 2-ER-257 and 2-ER-318. While he was represented by other counsel for his SDNY plea, conflicted counsel again represented him at the joint sentencing. 1-ER-13. Had Zuberi's conflicted counsel not "sealed his lips" as to the DPAs and NPA being offered to similarly situated defendants, Zuberi would not have entered a plea to either information or would have moved to withdraw both of his pleas.

But, if this Court decides that only the CDCA plea—and not the SDNY plea—should be set aside, remand to a different judge for resentencing is required. Where, as here, a single overall sentence is imposed as a package sentence on multiple counts, and some counts are reversed or vacated on appeal, "the sentencing package comes 'unbundled,'" *United States v. Ruiz-Alvarez*, 211 F.3d 1181, 1184 (9th Cir. 2000) and the sentence is vacated and the case remanded for resentencing only on the undisturbed count. *See United States v. Davis*,

854 F.3d 601, 606 (9th Cir. 2017). Here, the SDNY count is governed by a separate plea agreement, which contains an agreed Guidelines level of 12, corresponding to an advisory Guidelines range of 10-16 months. *See* 2-ER-245. That plea agreement bars the government from "seek[ing], argu[ing], or suggest[ing] in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the offense level be imposed," *id.*, and Zuberi would demand specific performance of that agreement, to present a "united front" seeking that level-12 sentence. *See United States v. Alcala-Sanchez*, 666 F.3d 571, 576-77 (9th Cir. 2012). In such circumstances, this Court's precedents require remand to a different sentencing judge, to avoid either the risk or appearance of prejudgment after the earlier sentence and appeal. *See United States v. Camarillo-Tello*, 236 F.3d 1024, 1028 (9th Cir. 2001) (citation omitted).

## CONCLUSION

Because the violation of Zuberi's Sixth Amendment right to conflict-free counsel rendered his guilty pleas involuntary, those pleas should be set aside and his convictions vacated.

If the Court sets aside only the CDCA plea, however, then resentencing on the SDNY count alone is required. Because Zuberi will demand specific performance of his SDNY plea agreement, remand to a different judge is required.

Respectfully submitted,

| | |
|---|---|
| January 20, 2023 | *s/ Timothy A. Scott* |
| Dated | Timothy A. Scott |
| | Marcus S. Bourassa |
| | MCKENZIE SCOTT, PC |
| | 1350 Columbia Street, Ste. 600 |
| | San Diego, CA 92101 |
| | tscott@mckenziescott.com |
| | mbourassa@mckenziescott.com |
| | *Counsel for Appellant* |

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s) <u>21-50048; 21-50084</u>**

I am the attorney or self-represented party.

**This <u>UNSEALED</u> brief only contains <u>4,270</u> words,** including <u>0</u> words manually counted in any visual images, and excluding the items exempted by FRAP 32(f).

The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ X ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** <u>*s/ Timothy A. Scott*</u>        **Date** <u>January 20, 2023</u>

*(use "*s/[typed name]*" to sign electronically-filed documents)*

24