Nos. 21-50048, 21-50084

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,
*v.*
IMAAD SHAH ZUBERI,
*Defendant-Appellant.*

*APPEAL FROM THE UNITED STATES DISTRICT COURT*
*FOR THE CENTRAL DISTRICT OF CALIFORNIA*
*CASE NOS. 2:19-CR-00642, 2:20-CR-00155*
*THE HONORABLE VIRGINIA A. PHILLIPS*

## GOVERNMENT'S BRIEF

E. MARTIN ESTRADA
United States Attorney
Central District of California

BRAM M. ALDEN
Assistant United States Attorney
Chief, Criminal Appeals Section
DANIEL J. O'BRIEN
Assistant United States Attorney
Senior Litigation Counsel
Public Corruption/Civil Rights Section
1500 United States Courthouse
312 North Spring Street
Los Angeles, CA 90012
Telephone: (213) 894-2468
Daniel.obrien@usdoj.gov

MATTHEW G. OLSEN
Assistant Attorney General
for National Security

STEVEN M. DUNNE
Chief, Appellate Unit
EVAN TURGEON
Acting Deputy Chief
VIRGINIA M. VANDER JAGT
Appellate Counsel
National Security Division
U.S. Department of Justice
Washington, DC 20530
Telephone: (202) 616-0741
Virginia.Vanderjagt@usdoj.gov
Attorneys for Appellee
UNITED STATES OF AMERICA

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................iv

INTRODUCTION ................................................................................1

STATEMENT OF JURISDICTION...........................................................1

ISSUE PRESENTED ...........................................................................2

STATEMENT OF THE CASE.................................................................2

    1. Zuberi's Business.....................................................................2

    2. Federal Charges ......................................................................6

    3. Guilty Pleas...........................................................................7

    4. Sentencing............................................................................9

SUMMARY OF THE ARGUMENT ........................................................10

ARGUMENT ....................................................................................11

I.   This Court Should Enforce Zuberi's Appeal Waiver Because He
    Cannot Establish a Conflict of Interest or an Adverse Effect on His
    Representation ...............................................................................11

    A.   Standard of Review ..........................................................11

    B.   Zuberi Does Not State a Cognizable Challenge to His New York
        Plea ...............................................................................12

    C.   There Was No Conflict of Interest in Defense Counsel's
        Representation of a Defendant in an Unrelated Case .........................12

        1. The Record Is Sufficient for This Court To Determine That
          There Was No Conflict of Interest.................................................13

2.  Zuberi Cannot Establish That the Circumstances Adversely Affected His Counsel's Performance ............................................... 18

3.  Zuberi Has Not Established That He Would Have Gone to Trial ........................................................................................... 20

4.  Zuberi's Plea Was Knowing and Voluntary, and His Appeal Should Be Dismissed ..................................................................... 21

D.   There Is No Basis for a Remand or Reassignment ............................ 22

CONCLUSION ............................................................................................... 24

Certificate of Compliance ........................................................................ 25

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page**

*Brady v. United States*, 397 U.S. 742 (1970)............................................................21

*Cuyler v. Sullivan*, 446 U.S. 335 (1980)................................................13, 14, 18, 19

*Garcia v. Bunnell*, 33 F.3d 1193 (9th Cir. 1994)....................................................11

*Hill v. Lockart*, 474 U.S. 52 (1985) ..........................................................................20

*Holloway v. Arkansas*, 435 U.S. 475 (1978) ....................................................17, 18

*Lee v. United States*, 582 U.S. 357 (2017)................................................................20

*Mannhalt v. Reed*, 847 F.2d 576 (9th Cir. 1988) ............................................... 16-17

*Mickens v. Taylor*, 535 U.S. 162 (2002)....................................................13, 18, 19

*Nix v. Whiteside*, 475 U.S. 157 (1986)......................................................................16

*North Carolina v. Alford*, 400 U.S. 25 (1970) ........................................................21

*United States v. Acosta-Chavez*, 727 F.3d 903 (9th Cir. 2013)..............................22

*United States v. Arnett*, 628 F.2d 1162 (9th Cir. 1979)....................................22, 23

*United States v. Cronic*, 466 U.S. 648 (1984) ........................................................13

*United States v. McKenna*, 327 F.3d 830 (9th Cir. 2003) ................................13, 14

*United States v. Navarro-Botello*, 912 F.2d 318 (9th Cir. 1990) ..........................21

*United States v. Robin*, 553 F.2d 8 (2d Cir. 1977)..................................................23

*United States v. Ross*, 206 F.3d 896 (9th Cir. 2000) ........................................13, 14

*United States v. Stantini*, 85 F.3d 9 (2d Cir. 1996)..................................................19

iv

*United States v. Waknine*, 543 F.3d 546 (9th Cir. 2008) ..........................................22

*United States v. Walter-Eze*, 869 F.3d 891 (9th Cir. 2017) .....................................18

*United States v. Wells*, 394 F.3d 725 (9th Cir. 2005) ..............................................19

*Washington v. Lampert*, 422 F.3d 864 (9th Cir. 2005) ............................................20

**Statutes**

18 U.S.C. § 1512 ...................................................................................................7, 8

18 U.S.C. § 3231 ..........................................................................................................1

18 U.S.C. § 3553(a) ...................................................................................................10

22 U.S.C. § 612 ............................................................................................................6

22 U.S.C. § 618(a)(2) ...................................................................................................6

26 U.S.C. § 7201 ..........................................................................................................6

28 U.S.C. § 1291 ..........................................................................................................2

28 U.S.C. § 2255 ........................................................................................................21

52 U.S.C. § 30109(d)(1) ...............................................................................................7

52 U.S.C. § 30116 ........................................................................................................7

52 U.S.C. § 30118 ........................................................................................................7

52 U.S.C. §§ 30121-30122 ...........................................................................................7

## INTRODUCTION

Imaad Shah Zuberi used money from clients, primarily foreign individuals, entities, and nations, to fund illegal campaign contributions that bought him political influence, and he used that influence to lobby U.S. officials for policy changes on behalf of several foreign principals without registering, as required, under the Foreign Agents Registration Act (FARA). 2-ER-321-322. Zuberi also fraudulently converted funds obtained from his foreign clients and failed to report millions of this income to the Internal Revenue Service (IRS). 3-ER-400-402, 1-ER-32. After Zuberi learned of the government's investigation, he filed false and misleading FARA registration statements, paid witnesses in return for their silence, and destroyed subpoenaed documents. 1-ER-33-37. Zuberi eventually pleaded guilty to violating the Federal Election Campaign Act and FARA, to committing tax evasion, and to obstructing justice. He waived his right to appeal his convictions and his sentence pursuant to two plea agreements. He now appeals, alleging that one of his many counsel had a conflict of interest. But the facts he relies on do not establish either a conflict of interest or any prejudice, and this Court should dismiss his appeal.

## STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. The district court entered judgment on February 23, 2021. Zuberi filed a

1

timely notice of appeal on March 4, 2021, in case number 2:19-cr-00642, 3-ER-420.  The district court on April 5, 2021, granted his combined motion to clarify that the notice of appeal was filed in both consolidated cases, and to extend the time to appeal in case number 20-cr-00155 through April 9, 2021.  3-ER-419.  Defendant filed a timely notice of appeal in that case on April 8, 2021.  3-ER-412.  This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## ISSUE PRESENTED

Did the alleged failure of Zuberi's counsel to tell Zuberi about the deferred prosecution agreement an unrelated defendant was seeking in an unrelated case constitute a conflict of interest that negated the voluntariness of Zuberi's guilty plea even though defense counsel sought the same disposition for Zuberi?

## STATEMENT OF THE CASE

### 1.  Zuberi's Business

From 2012 until 2017, defendant Imaad Shah Zuberi solicited money from foreign clients, including foreign nationals and entities from Saudi Arabia, Kuwait, and the United Arab Emirates, to make political donations, promising that he had influence in Washington that could be used to their benefit.  2-ER-321-322.  Although the Federal Election Campaign Act (FECA) prohibits donations from foreign nationals or from foreign or domestic corporations, and FECA also prohibits making contributions through intermediaries ("conduit contributions"),

2

Zuberi funneled this foreign money and made other illegal contributions totaling nearly one million dollars to at least 26 federal political campaigns. 2-ER-326-331.

Zuberi made unlawful campaign contributions, but he used most of the funds the clients gave him instead to pay off his mortgage, to fund a personal business, and to buy real estate. 2-ER-333-346. Zuberi did not report to the IRS the money that he diverted for his own benefit as income. For instance, he did not report money from a Ukrainian company, 2-ER-347, 349, from the Sri Lankan government, 2-ER-348-349, or from a Kuwaiti company, 1-ER-21, sent to Zuberi for use as contributions to political events or to campaigns, that Zuberi instead converted for personal use. 2-ER-334, 348.

Zuberi also had unreported income through a company called U.S. Cares that he created for the stated purpose of exporting humanitarian supplies to Iran. 2-ER-327. He convinced people and companies to invest in U.S. Cares, 2-ER-327-328, 340, but failed to transfer their funds into the company's capital account or to use their funds to buy humanitarian supplies for Iran. Instead, Zuberi converted much of the money for his personal use. 2-ER-341-342. He did not report to the IRS the approximately $5,423,000 in income he converted from U.S. Cares investors. 2-ER-348-349. The court found a total tax loss from the years 2012 to 2015 of $7,200,556. 1-ER-24.

3

Most of Zuberi's clients were foreign individuals or representatives of foreign governments. For instance, Zuberi negotiated an agreement with the government of Sri Lanka to engage in a lobbying and public relations campaign on their behalf to improve the perception of Sri Lanka in the United States and to seek congressional resolutions relating to Sri Lanka's human rights record. In the engagement, he agreed to spend $1,500,000 per quarter for lobbying expenses and $250,000 per quarter to pay for advertising from media outlets, along with $500,000 per quarter for legal expenses. 2-ER-342. Instead, Zuberi transferred much of the money he received from the Sri Lankan government into personal accounts and used it to purchase real estate and to pay off personal debt, and he directed the issuance of false receipts for the Sri Lankan officials. 2-ER-343-346. Zuberi did solicit members of Congress to accept trips to Sri Lanka, and he engaged lobbyists for Sri Lanka. 2-ER-349-350. He coordinated meetings in Washington, D.C., between Sri Lankan officials and U.S. Senators, Members of Congress, and their staff. *Id.* But he directed one of his colleagues not to pay certain invoices for services rendered to his company and to falsely tell the subcontractors that Sri Lanka had provided insufficient funds to fund those expenses. 2-ER-346-347.

Zuberi failed to timely register as an agent under the Foreign Agent Registration Act when he undertook his representation of Sri Lanka. Zuberi only

4

belatedly filed a FARA registration statement after being informed by a reporter about a soon-to-be-published story that Zuberi was under criminal investigation for failing to register as an agent of the Sri Lankan government. 2-ER-351-353. But Zuberi's FARA filings falsely characterized his relationship with the Sri Lankan government and were otherwise false and misleading. 2-ER-353-354.

Zuberi had created a company called Beltway Government Services, Inc. (BGS) for use in the Sri Lankan engagement, and then he had another person register BGS under FARA in order to conceal Zuberi's control of the representation. 2-ER-350-351. That FARA registration failed to report any of the money received from Sri Lanka or the money disbursed in the lobbying and public relations efforts. 2-ER-350-351. Zuberi then made a series of additional FARA filings with respect to his own involvement, which contained false statements and omissions. 2-ER-351-354.

Zuberi also impeded investigations into his unlawful conduct on multiple occasions after he learned of the federal investigation in February 2017. For example, Zuberi met with an individual for whom Zuberi had made illegal campaign contributions, searched him for possible recording devices, and asked the donor not to enter the United States. 1-ER-35. When the donor later revealed that the FBI had subpoenaed him, Zuberi expressed concern about going to prison,

5

offered the donor first one million dollars, then two million dollars, and asked the donor not to say anything to the FBI.  1-ER-35.

When Zuberi learned from the media of an investigation in New York into his contributions to a presidential inaugural committee, Zuberi gave another donor for whom he had made illegal campaign contributions a back-dated check to make it appear that the funds were returned before the press reports about the investigation.  2-ER-243-244; 3-ER-367-370.

After the government issued a subpoena for Zuberi's corporate emails, defense counsel informed the government that Zuberi had access to thousands of emails in Zuberi's name and to 14 other individuals' accounts residing on a corporate email domain but requested that production be placed in abeyance to avoid tipping off other individuals as to the government's investigation.  1-ER-36-37.  When the government later insisted on production, "the majority of the e-mails were no longer in existence which was done to . . . avoid detection and responsibility."  1-ER-25.

### 2.  Federal Charges

Zuberi was charged in an information in the Central District of California with violations of FARA (22 U.S.C. §§ 612 and 618(a)(2)) based on his false statements in several filings pertaining to his representation of the Sri Lankan government, 2-ER-356-357; tax evasion (26 U.S.C. § 7201) with respect to his

6

failure to report $5,650,000 in earnings from the Sri Lankan contract and under-reporting his income by over $5,000,000 in 2014-2015, 2-ER-358; and violating the Federal Election Campaign Act (52 U.S.C. §§ 30116, 30118, 30121, 30122, 30109(d)(1)) in 2015 by making contributions in the names of other individuals, reimbursing contributions made by other individuals, receiving reimbursements from other individuals for contributions he made, soliciting contributions from foreign nationals, and making contributions with money from foreign nationals and foreign entities, 2-ER-359.

Zuberi was charged in the Southern District of New York with one charge of obstruction of justice, in violation of 18 U.S.C. § 1512, based on his back-dated check to refund an illegal campaign contribution. 3-ER-367.

### 3. Guilty Pleas

Zuberi's counsel negotiated with the government and unsuccessfully sought a deferred prosecution agreement for Zuberi. *See* SER-3 (defense counsel stated in meeting with government that Zuberi "is still seeking a deferred prosecution"). Zuberi eventually pleaded guilty in the Central District of California on November 22, 2019, pursuant to a plea agreement with a waiver of appellate rights, 2-ER-299-320, including a waiver of the right to appeal his sentence. 2-ER-313. The agreement included an exception for a claim that his plea was involuntary. 2-ER-313.

7

Zuberi was represented by counsel from at least five law firms; attorneys Thomas O'Brien from the firm Brown George Ross LLP, and Evan Davis from the firm Hochman Salkin Toscher Perez, PC, signed the plea agreement in California, 2-ER-318, and represented Zuberi in his change-of-plea hearing. 2-ER-257. At the plea colloquy, the district court engaged in a meticulous inquiry with Zuberi, informing him of all the rights he was giving up. The court determined that his plea had a factual basis, was free from coercion, and was voluntary and knowing. 2-ER-261-296.

Zuberi then signed a plea agreement on March 5, 2020, in the Southern District of New York, agreeing to plead guilty to one count of obstruction of justice, in violation of 18 U.S.C. § 1512(c)(1)-(2). 2-ER-239-255. The agreement included an appeal waiver, with an exception for claims that the plea was involuntary. 2-ER-247. David Kelley with Dechert LLP signed the plea agreement as Zuberi's lawyer, 2-ER-253, and Jeffrey Brown of Dechert LLP represented him at the change-of-plea hearing for that charge. 2-ER-207.

The government moved to file the Southern District of New York plea agreement in the Central District of California, 2-ER-237, and that court granted a joint oral motion to consolidate the two cases. 2-ER-234. The district court held the change-of-plea hearing for the New York obstruction-of-justice charge on June

8

30, 2020, at which it again conducted a careful colloquy to determine that Zuberi was pleading guilty voluntarily and knowingly.  2-ER-208-235.

### 4. Sentencing

After sealed litigation that is the subject of a sealed appellate brief, the district court sentenced Zuberi on February 18, 2021, to a total of 144 months of imprisonment: 60 months for the FARA violations, 60 months for the tax evasion charge, and 60 months for the campaign finance violation, each to run concurrently; and 84 months on the New York obstruction count, to be served consecutively.  The court also imposed a three-year term of supervised release.  In addition, the court ordered restitution in the amount of $15,705,080.11 and imposed a $1,750,000 fine.  1-ER-3-11.

The Presentence Investigation Report (PSR) calculated an advisory guideline range of 121 to 151 months of imprisonment for the tax, FECA, and obstruction offenses.  At the sentencing hearing, the court agreed that a two-level upward adjustment of the offense level for obstruction of justice was appropriate because Zuberi "paid or offered to pay multiple witnesses so that they would not fly to the United States where they could be interviewed by law enforcement, urged him [sic] not to talk to law enforcement officials, urged them to corroborate the defendant's stories and provide statements that exonerated him."  1-ER-25; *see also* 1-ER-35.  The court also found that Zuberi, after receiving a subpoena,

deleted the majority of the emails his counsel had previously indicated might be responsive. 1-ER-25, 1-ER-36-37.

The court weighed the sentencing factors outlined in 18 U.S.C. § 3553(a), reciting Zuberi's criminal conduct, 1-ER-29-37, as well as his personal history and characteristics, 1-ER-37. The court discussed deterrence and the need to protect the public as "important factors in this case." 1-ER-41. The court observed that the FARA offenses do not have a corresponding sentencing guideline, so they were unaccounted for in the PSR's calculation of the advisory guideline range. The court explained that "because of the lack of accounting for the FARA violations which are very serious and the other relevant uncharged conduct," the court considered a "sentence outside the guideline range in this case, above the guideline range." 1-ER-42. "But," the court continued, "having considered all of the evidence submitted by both sides . . . including the mitigating evidence submitted by the defense," it decided to impose a within-guidelines sentence. *Id.*

## SUMMARY OF THE ARGUMENT

Zuberi, ably represented by multiple counsel at different law firms, knowingly and voluntarily waived his right to appeal his convictions and sentence, but, dissatisfied by the result, he now seeks to void his agreement by arguing that his counsel had a conflict of interest that rendered his plea invalid. This Court should reject his claim. Generally, claims that a counsel's conflict of interest

10

rendered a plea involuntary should be developed through collateral proceedings. However, in this case, the record is clear enough that the Court should reject Zuberi's claim on direct appeal. Zuberi does not allege facts establishing a conflict of interest, and he is unable to establish that the circumstances adversely affected his counsel's performance.

Zuberi argues that one of his attorneys should have told him that another client in an unrelated case was pursuing a deferred prosecution agreement with the government. A counsel's representation of clients in unrelated cases does not establish a conflict of interest. Moreover, Zuberi's counsel expressly sought a deferred prosecution agreement for Zuberi, but the government declined to offer one. Because Zuberi's counsel pursued the very disposition Zuberi claims was missing from his calculations on whether to plead guilty, Zuberi cannot establish any adverse effect on his counsel's performance based on the alleged conflict.

## ARGUMENT

**I.  This Court Should Enforce Zuberi's Appeal Waiver Because He Cannot Establish a Conflict of Interest or an Adverse Effect on His Representation**

### A.  Standard of Review

A claim that counsel suffered from a conflict of interest represents a mixed question of fact and law, calling for de novo review. *Garcia v. Bunnell*, 33 F.3d 1193, 1195 (9th Cir. 1994).

11

**B.      Zuberi Does Not State a Cognizable Challenge to His New York Plea**

Zuberi waived his right to appeal his conviction and sentence in both his New York and his California plea agreements.  2-ER-313, 2-ER-248.  The two plea agreements reserved a narrow exception for appeals based on a claim that the pleas were involuntary.  2-ER-313, 2-ER-247.  Zuberi claims that one of his attorneys, Evan Davis, who represented him on the charges filed in the Central District of California, suffered from a conflict of interest and that this conflict rendered Zuberi's pleas involuntary.  AOB-17.  Zuberi had different counsel from a different firm for his New York plea—David Kelley and Jeffrey Brown of Dechert LLP—and he does not allege that they had a conflict of interest.  Therefore, Zuberi's knowing and voluntary appeal waiver in the New York plea agreement should preclude challenges to his conviction or sentence on the obstruction charge filed in New York.

**C.      There Was No Conflict of Interest in Defense Counsel's Representation of a Defendant in an Unrelated Case**

Zuberi claims that his counsel Evan Davis had a conflict of interest because Davis represented a foreign client in an unrelated case and Davis should have mentioned to Zuberi that the foreign client had a deferred prosecution agreement with the government.  Zuberi argues that this omission created a Sixth Amendment

12

violation, rendering his guilty plea involuntary. AOB-20-21. To the contrary, Zuberi cannot establish a conflict of interest.

> **1.     The Record Is Sufficient for This Court To Determine That There Was No Conflict of Interest**

The Sixth Amendment encompasses a criminal defendant's right to effective assistance of counsel. *See United States v. Cronic*, 466 U.S. 648, 658 (1984). In some circumstances, a conflict of interest may adversely affect counsel's performance and constitute a denial of effective assistance of counsel in violation of the Sixth Amendment. *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). To establish a violation of the Sixth Amendment, a defendant who alleges that he had a conflicted counsel but who raised no objection before the district court must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. *Mickens v. Taylor*, 535 U.S. 162, 166 (2002).

Such claims are generally inappropriate on direct appeal; collateral review is favored to "'permit counsel to develop a record as to what counsel did, why it was done, and what, if any, prejudice resulted.'" *United States v. McKenna*, 327 F.3d 830, 845 (9th Cir. 2003) (quoting *United States v. Ross*, 206 F.3d 896, 900 (9th Cir. 2000)). There are two exceptions to this rule: "'(1) when the record on appeal is sufficiently developed to permit review and determination of the issue, or (2) when the legal representation is so inadequate that it obviously denies a defendant

13

his Sixth Amendment right to counsel.'" *McKenna*, 327 F.3d at 845 (quoting *Ross*, 206 F.3d at 900).

Here, the record is sufficient for this Court to reject Zuberi's appeal because Zuberi cannot establish a conflict based on the circumstances he describes, let alone an adverse effect. "[U]ntil a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." *Cuyler*, 446 U.S. at 349-50.

First, there was no conflict of interest because the case in which Zuberi's counsel represented another defendant had no factual relationship to Zuberi's case. Counsel Davis represented Joseph Arsan, a French resident who assisted another foreign individual, Gilbert Chagoury, in making contributions to U.S. federal election campaigns. Arsan's case involved an entirely different scheme, perpetrated by individuals with no connection to Zuberi, on behalf of different foreign principals, and supported by different witnesses and documentary evidence. Arsan entered into a deferred prosecution agreement with the government to resolve an investigation into his tax and federal election law violations. 2-ER-93. In further contrast with Zuberi's case, the Arsan matter did not involve an obstruction of justice offense.[1]

---

[1] Zuberi also points to three other defendants who received deferred prosecution agreements, AOB-6-9, but he does not claim any conflict of interest related to those matters. He therefore does not state a basis for a conflict of interest

14

Zuberi asserts that his counsel had "divided" loyalties because he could not divulge Arsan's plea negotiations with the government to Zuberi. This cannot be the standard for a conflict of interest because the duty of confidentiality prevents an attorney from divulging unrelated clients' negotiations to other clients. Zuberi's argument that his defense counsel was obliged to tell him about negotiations with the government in an unrelated case would mean that a defense attorney would have to inform one client about another client's potential negotiations with the government. Such a rule would be unethical and untenable: no defense counsel could represent clients accused of violating the same criminal statutes because these similarities would create an automatic conflict of interest. To the contrary, a counsel ably performs his role when he pursues the best outcome he can for each individual client in negotiations with the government.

Zuberi cites no cases holding that a conflict of interest arises from unrelated cases with no factual connection. He cites a bar rule requiring a written waiver if there is "a significant risk the lawyer's representation of the client will be materially limited by the lawyer's responsibilities to or relationships with another

arising out of those cases. Moreover, Zuberi consented to waive any potential conflict of interest based on one of those defendants: Zuberi consented to have a Steptoe attorney represent him even though the Steptoe law firm represented Chagoury. SER-8. Zuberi does not explain why he would consent to waive one alleged conflict while insisting that an alleged conflict involving an associated defendant would vitiate the voluntariness of his plea.

15

client." *See* AOB-15-16 (quoting State Bar of California, *Rules of Professional Conduct, Rule 1.7(b) Conflict of Interest: Current Clients* (2018)). There was no such risk here, as his counsel demonstrated by seeking a deferred prosecution agreement for Zuberi.[2]

Nor was there any obligation for the prosecution to inform Zuberi about negotiations with defendants in unrelated cases. *See* AOB-16 n.13 ("The government also could have informed Zuberi and the court of the conflict and sought to resolve the issue.") (citing *Mannhalt v. Reed*, 847 F.2d 576, 583-84 (9th Cir. 1988)).[3] The case Zuberi cites does not hold that the government has an obligation to identify potential conflicts of interest among defense counsel. In *Mannhalt*, the court found an actual conflict of interest when a key witness accused

---

[2] Even if there had been an ethical issue, an ethical issue is not equivalent to a Sixth Amendment violation. *See Nix v. Whiteside*, 475 U.S. 157, 165 (1986) ("breach of an ethical standard does not necessarily make out a denial of the Sixth Amendment guarantee of assistance of counsel.").

[3] The government *did* flag a related representation issue. 2-ER-87. The defense filed a letter demanding discovery regarding the disposition agreements for Arsan and three other defendants. Exhibit, *Reply in Support of Notice of Motion and Motion for Hearing as to Motion to Extend Surrender Date*, ECF No. 359-3 (filed Apr. 23, 2021). When the motion was addressed in court, the government noted that the firm Steptoe and Johnson represented one of those defendants and represented Zuberi. 2-ER-87. The defense had stated in its request that "Mr. Zuberi has consented to this arrangement and there is no prejudice because existing co-counsel of record . . . will handle those aspects of Mr. Zuberi's representation." SER-8.

the defense attorney of being involved in the crime for which the defendant was being tried. *See Mannhalt*, 847 F.2d at 583. The court in "a final note" suggested the prosecution could have brought the conflict to the court's attention. *Id.* at 583-84. The court's frustration in the unusual circumstances of that case does not create a general obligation for the government to identify potential conflicts of interest among defense counsel, much less a requirement that the government reveal plea negotiations in unrelated cases.

Zuberi cites *Holloway v. Arkansas*, 435 U.S. 475 (1978), *see* AOB-18, 20, in an attempt to argue that there was a conflict here, but *Holloway* involved codefendants, a classic potential conflict situation. In *Holloway*, appointed counsel represented three codefendants in the same trial who were charged with robbing a restaurant and raping the employees. Counsel made a timely but unsuccessful motion for appointment of separate counsel based on the conflict of interest among his clients, who each took the stand to say that he was not present at the crime. The counsel found himself "muzzled" regarding the questioning of the codefendants to not incriminate any of his clients. *Id*. at 479. The Supreme Court held that when a trial court improperly requires joint representation of codefendants with conflicts of interest over timely objection, prejudice is presumed. *Id*. at 489-91.

17

The Supreme Court in *Cuyler v. Sullivan* clarified that such a presumption is limited to the circumstances of a preserved objection at a codefendants' trial—and neither circumstance is present here. 446 U.S. at 348. The representation of codefendants in *Holloway* and *Cuyler*, where conflicts of interest among codefendants were an obvious risk, is a different circumstance from the representation of defendants in entirely unrelated cases.

In short, the agreements the government made with other campaign finance violators have no bearing on Zuberi's case; Arsan's case was unrelated to Zuberi's, and Zuberi's counsel's loyalties were not divided.

## 2. Zuberi Cannot Establish That the Circumstances Adversely Affected His Counsel's Performance

Zuberi's claim also fails because he cannot establish that counsel Davis's representation of Arsan adversely affected his counsel's performance. If there had been a conflict of interest, "it [is] at least necessary, to void the conviction, for petitioner to establish that the conflict of interest adversely affected his counsel's performance." *Mickens*, 535 U.S. at 174; *see also Cuyler*, 446 U.S. at 348 ("In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance."); *United States v. Walter-Eze*, 869 F.3d 891, 906 (9th Cir. 2017) ("although [counsel] operated under an actual conflict, [defendant] must nonetheless show that [counsel's] 'defects in assistance [had a]

18

probable effect upon the trial's outcome'") (quoting *Mickens*, 535 U.S. at 166).  To
show an adverse effect, a defendant must show "'that some plausible alternative
defense strategy or tactic might have been pursued but was not and that the
alternative defense was inherently in conflict with or not undertaken due to the
attorney's other loyalties or interests.'"  *United States v. Wells*, 394 F.3d 725, 733
(9th Cir. 2005) (quoting *United States v. Stantini*, 85 F.3d 9, 16 (2d Cir. 1996)).

Here there was no adverse effect on defense counsel, who in fact *did* attempt
to pursue the very "alternative course[] of action" Zuberi now cites (AOB-17)—a
deferred prosecution agreement.  *See* CER-3.  Zuberi argues that "his conflicted
counsel failed to inform him of viable 'alternative courses of action' based on the
same prosecuting agency's offers to similarly situated defendants."  AOB-17.
Zuberi also claims that the "conflict of interest adversely affected [his counsel's]
advocacy," AOB-20, but he does not explain any way in which his counsel's
advocacy was deficient.  *Cf. Cuyler*, 446 U.S. at 350 ("the possibility of conflict is
insufficient to impugn a criminal conviction").  The fact that defense counsel may
not have recited to Zuberi what disposition other unrelated defendants were
seeking is irrelevant; Zuberi's counsel actively attempted to negotiate the best
disposition he could, including a deferred prosecution agreement, for Zuberi.  The
government did not agree to such an arrangement, which also defeats any idea that
Zuberi could have negotiated a deferred prosecution agreement if only he had

known that other unrelated defendants had deferred prosecution agreements with the government.  *See* AOB-17.

### 3.    Zuberi Has Not Established That He Would Have Gone to Trial

In addition to the *Mickens* requirement to show that a conflict had an adverse effect on counsel's performance, a defendant alleging that ineffective assistance of counsel from a conflict of interest rendered his plea involuntary must establish that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Washington v. Lampert*, 422 F.3d 864, 873 (9th Cir. 2005) (quoting *Hill v. Lockart*, 474 U.S. 52, 59 (1985)); *see also Lee v. United States*, 582 U.S. 357, 365 (2017) (defendant must show that, "properly advised, [he] would have opted to go to trial").  Reviewing courts "should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Lee*, 582 U.S. at 369.  Rather, courts should look "to contemporaneous evidence to substantiate a defendant's expressed preferences."  *Id.*

Nothing in the record indicates that Zuberi was interested in going to trial, and while his appellate brief suggests at one point that he would not have pleaded

guilty, AOB-11, it also suggests he might have simply pushed for a better plea deal, AOB-16, 17. This is insufficient to void a valid plea agreement.[4]

**4.    Zuberi's Plea Was Knowing and Voluntary, and His Appeal Should Be Dismissed**

Without establishing a prejudicial conflict of interest, Zuberi cannot establish that his plea was involuntary. He cites *North Carolina v. Alford*, 400 U.S. 25, 31 (1970), and *Brady v. United States*, 397 U.S. 742 (1970), to suggest that his plea was not voluntary, *see* AOB-17, but those cases are inapposite. They do not concern conflicts of interest, and the Supreme Court in each case found that the defendant's guilty plea was voluntary.

The only challenge Zuberi makes to the voluntariness of his guilty plea to the California charges is the alleged conflict of interest he raises, which, as explained above, did not constitute a conflict. The district court made a thorough inquiry to determine that Zuberi's plea was knowing and voluntary, and Zuberi does not challenge the adequacy of the court's findings. This Court should therefore enforce Zuberi's appellate waiver and dismiss his appeal. *See United States v. Navarro-Botello*, 912 F.2d 318, 319 (9th Cir. 1990) (a defendant's waiver of the right to appeal is enforceable if it was made knowingly and voluntarily).

_____

[4] If this Court declines to decide the conflict issue on direct appeal, it should dismiss the appeal and leave Zuberi free to pursue his claim through a motion under 28 U.S.C. § 2255.

### D.     There Is No Basis for a Remand or Reassignment

Zuberi argues that if this Court only vacates his guilty plea as to the charges from the Central District of California, this Court should remand for resentencing in front of a different sentencing judge and in fact should remand to the court in the Southern District of New York.  AOB-21-22.  For the reasons stated above, this Court should not vacate the California plea agreement and therefore should not remand the case.  Moreover, if this Court were to vacate the California plea and remand for resentencing, there is no basis for requiring a different sentencing judge or for sending the case to the Southern District of New York.  "This Court's 'general rule' is that '[a]bsent unusual circumstances, resentencing is to be done by the original sentencing judge.'"  *United States v. Acosta-Chavez*, 727 F.3d 903, 910 (9th Cir. 2013) (quoting *United States v. Waknine*, 543 F.3d 546, 560 (9th Cir. 2008)); *see also United States v. Arnett*, 628 F.2d 1162, 1165 (9th Cir. 1979).  This Court has articulated three factors to consider in deciding whether resentencing by a new judge is appropriate:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*Arnett*, 628 F.2d at 1165 (quoting *United States v. Robin*, 553 F.2d 8, 10 (2d Cir. 1977) (en banc)).  The first two factors are not present here, as Zuberi does not allege an error and there was no appearance of injustice, and the case does not present unusual circumstances.  Moreover, reassignment would entail waste out of proportion to any perceived gain.

## CONCLUSION

For the reasons set forth above, the appeal should be dismissed or, in the alternative, the convictions and sentence should be affirmed.

June 28, 2023                          Respectfully submitted,

E. MARTIN ESTRADA                      MATTHEW G. OLSEN
United States Attorney                 Assistant Attorney General
                                       for National Security
BRAM M. ALDEN
Assistant United States Attorney       STEVEN M. DUNNE
Chief, Criminal Appeals Section        Chief, Appellate Unit
DANIEL J. O'BRIEN                      EVAN TURGEON
Senior Litigation Counsel              Acting Deputy Chief
                                       /s/ Virginia M. Vander Jagt
                                       VIRGINIA M. VANDER JAGT
                                       Appellate Counsel
                                       National Security Division
                                       U.S. Department of Justice
                                       Washington, DC 20530
                                       202-616-0741
                                       Virginia.Vanderjagt@usdoj.gov
                                       Attorneys for Appellee
                                       UNITED STATES OF AMERICA

24

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 21-50048, 21-50084

I am the attorney or self-represented party.

**This brief contains** | 5,139 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◯ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◉ complies with the length limit designated by court order dated 3/30/23 .

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Virginia Vander Jagt | **Date** | 6/28/23

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**        *Rev. 12/01/22*