**Nos. 21-50048; 21-50084**

---

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

---

**UNITED STATES OF AMERICA,**

*Plaintiff-Appellee,*

v.

**IMAAD SHAH ZUBERI,**

*Defendant-Appellant.*

---

*Appeal from the United States District Court for the Central District of California, Case Nos. 2:19-cr-00642-VAP; 2:20-cr-00155-VAP*
*The Honorable Virginia A. Phillips, United States District Judge*

---

**UNSEALED PORTION OF APPELLANT'S REPLY BRIEF**

Timothy A. Scott
Marcus S. Bourassa
MCKENZIE SCOTT, PC
1350 Columbia Street, Ste. 600
San Diego, CA 92101
tscott@mckenziescott.com
mbourassa@mckenziescott.com

*Counsel for Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ii

INTRODUCTION ...................................................................1

ARGUMENT ........................................................................2

    I.   Zuberi's counsel had an actual conflict of interest...................2

    a.   There was an actual conflict even though the cases were factually unrelated. ..........................................................2

    b.   The tension between the attorney's duty of confidentiality to Arsan, his duty of loyalty to Zuberi, and his resulting failure to act *is* the impermissible conflict. ...........................................5

    c.   Conflicts based on competing, concurrent duties are not limited to joint representations. ......................................6

    II.   Zuberi need only show *adverse effect*, not *Strickland* prejudice...........................................................................9

    III.   Zuberi was deprived of the unconflicted counsel of attorney Davis and thus denied the opportunity to make knowing and intelligent decisions at critical junctures in his case.....................11

CONCLUSION ......................................................................13

i

# TABLE OF AUTHORITIES

## Cases

*Cuyler v. Sullivan*, 446 U.S. 335 (1980) ............................................. 2, 3, 9

*Earp v. Ornoski*, 431 F.3d 1158 (9th Cir. 2005) ....................................... 8

*Foote v. Del Papa*, 492 F.3d 1026 (9th Cir. 2007) ..................................... 8

*Holloway v. Arkansas*, 435 U.S. 475 (1978) ............................... 3, 4, 9, 11

*Lewis v. Mayle*, 391 F.3d 989 (9th Cir. 2004) ........................................... 3

*Lockhart v. Terhune*, 250 F.3d 1223 (9th Cir. 2001) ................................. 3

*McClure v. Thompson*, 323 F.3d 1233 (9th Cir. 2003) ........................ 4, 12

*Mickens v. Taylor*, 535 U.S. 162 (2002) .......................................... passim

*Noguera v. Davis*, 5 F.4th 1020 (9th Cir. 2021) ................................... 8, 9

*Sanders v. Ratelle*, 21 F.3d 1446 (9th Cir. 1994) .................................... 3

*Strickland v. Washington*, 466 U.S. 668 (1984) ....................................... 5

*United States v. Hearst*, 638 F.2d 1190 (9th Cir. 1980) ........................... 3

*United States v. Wells*, 394 F.3d 725 (9th Cir. 2005) ............................... 3

*Wood v. Georgia*, 450 U.S. 261 (1981) ..................................................... 3

## INTRODUCTION

Appellant Zuberi submits this unsealed reply brief in response to the government's unsealed answering brief ("GAB"). ECF-79. The government argues that because Zuberi and Arsan's criminal cases were factually "unrelated," their attorney could not have labored under a conflict of interest. But that is not the law. Zuberi's attorney was constitutionally conflicted because he labored under an actual conflict of interest that adversely affected his representation of Zuberi. Courts have examined conflicts not only in "related" matters but in a variety of situations where the "basic duty" of an attorney to be loyal to her client has come into question. So too here. Finally, because this conflict arose in highly unusual factual circumstances, the government's "floodgates" argument is unpersuasive.

This Court should reverse Zuberi's convictions and remand for further proceedings before a different district court judge.

## ARGUMENT

### I.  Zuberi's counsel had an actual conflict of interest.

The government rightly notes that attorney Davis was bound by his duty of confidentiality to Arsan, and was thus forbidden from advising Zuberi that the same U.S. Attorney's Office had offered Arsan a deferred prosecution agreement for similar conduct. GAB-15.

Davis's ethical duty to Arsan prevented him from satisfying his duty of loyalty to his other client, Zuberi. And so Zuberi was denied material information affecting his plea and sentencing. This conflict—between two ethical duties and between two current clients—rendered Davis's representation of Zuberi constitutionally deficient.

### a. There was an actual conflict even though the cases were factually unrelated.

Zuberi's—and Arsan's—lawyer owed each client duties of both loyalty and confidentiality. When those duties were in direct tension—such that the lawyer could not honor them to one client without violating a duty to the other—the lawyer was unconstitutionally conflicted and should have revealed the conflict. *See Cuyler v. Sullivan*, 446 U.S. 335, 346 (1980).

2

The government argues there is no conflict of interest because Zuberi's and Arsan's cases were factually unrelated. GAB-14. But while Arsan's case was *unrelated* in a technical sense, it was far from *immaterial* to Zuberi's defense and sentencing. Some conflicts of interest can certainly arise from representation in factually-related matters or multiple-representation situations,[1] other conflicts of interest arise due to the personal interests of counsel or for other reasons, including duties to people other than the present client.[2]

The relevant legal question is not whether the matters were *related*, but whether attorney Davis's representation of Zuberi was *adversely affected* by his concurrent representation of Arsan. *Id.*; *Lockhart v. Terhune*, 250 F.3d 1223, 1226 (9th Cir. 2001) (citing *Wood v. Georgia*, 450 U.S. 261, 272 (1981)). "Adverse effect" does not require showing harm or

---

[1] *See, e.g., Sullivan*, 446 U.S. 335 (evaluating conflict created by multiple representation); *Holloway v. Arkansas*, 435 U.S. 475 (1978) (same); *Sanders v. Ratelle*, 21 F.3d 1446, 1453 (9th Cir. 1994) (examining conflict in successive representation situation).

[2] *See, e.g., Wood*, 450 U.S. at 272 (third party paying legal fees); *United States v. Wells*, 394 F.3d 725 (9th Cir. 2005) (same); *Lewis v. Mayle*, 391 F.3d 989 (9th Cir. 2004) (lawyer cross-examining witness he had recently represented on a DUI); *United States v. Hearst*, 638 F.2d 1190 (9th Cir. 1980) (attorney's book contract related to representation).

3

prejudice. *See* AOB-13-14; *United States v. Walter-Eze*, 869 F.3d 891, 901 (9th Cir. 2017); *Mickens v. Taylor*, 535 U.S. 162, 171 (2002). Adverse effect is shown, and the right to counsel is violated, when the "advocate's conflicting obligations have effectively sealed his lips on crucial matters." *Holloway v. Arkansas*, 435 U.S. 475, 490 (1978); *accord Mickens*, 535 U.S. at 186; *see also McClure v. Thompson*, 323 F.3d 1233, 1248 (9th Cir. 2003) ("The client must demonstrate that his attorney made a choice between possible alternative courses of action that impermissibly favored an interest in competition with those of the client."). Here, Davis's lips were sealed, both to his client Zuberi and to the court, regarding the fact that the U.S. Attorney's Office was entering deferred prosecution agreements in cases with similar fact patterns—a position at odds with its insistence that only a guilty plea with a 10-year-plus sentencing range could justly resolve Zuberi's case. Davis protected Arsan at Zuberi's expense, resulting in Zuberi not being informed of various alternative courses of action, and Davis not pursuing those courses of action on Zuberi's behalf. *See* Subsec. III, *infra*.

### b. The tension between the attorney's duty of confidentiality to Arsan, his duty of loyalty to Zuberi, and his resulting failure to act *is* the impermissible conflict.

The government argues there cannot have been a conflict here because attorney Davis's duty of confidentiality to Arsan meant he could not divulge Arsan's deal to Zuberi. GAB-15. It is true Davis owed that duty of confidentiality to Arsan—but that did not free him from his simultaneous duty of loyalty to Zuberi. On the contrary: the tension between those two concurrent, competing duties *is* the impermissible conflict.[3]

The existence of that conflict under the rare circumstances of this case does not mean such a conflict would "automatic[ally]" arise every time an attorney defends different clients charged with the same offense. GAB-15. It is rare that the same section of the same prosecutors' office will take such widely divergent positions in simultaneous prosecutions

---

[3] While not every breach of ethical standards implicates constitutional rights (GAB-16 n.2), the duties of loyalty and to avoid conflicts are "basic [Sixth Amendment] duties." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The duty of loyalty—the precise duty violated here—has been described as "perhaps the most basic of counsel's duties." *Id.* at 692.

that are as similar in both conduct and the combination of overlapping offenses as here. It is rarer still that a single defense attorney will happen to represent two different defendants in two of those simultaneous-but-divergent prosecutions. Such circumstances are hardly "automatic" or universal. But where they occur, as here, that does not free the attorney from one of his concurrent, competing duties. He must find a way to satisfy both, or he must reveal the conflict. What the attorney may *not* do is to silently choose between clients, honoring his duty to one while secretly abdicating his competing duty to the other. Such silent abdication denies the latter client his Sixth-Amendment-protected right to conflict-free counsel.

### c. Conflicts based on competing, concurrent duties are not limited to joint representations.

The government argues that conflicts based on concurrent, competing duties to different clients are limited to joint representations of co-defendants, as in *Holloway* and *Sullivan*. GAB-17-18. But neither the Supreme Court nor this Court has so limited its conflict jurisprudence.

In *Mickens*, the Court addressed the narrow question of whether automatic reversal, the remedy in *Holloway*, should result in a case of *successive* (not concurrent) representation that *did not* affect counsel's performance, where the court failed to inquire into the conflict. 535 U.S. at 164-165, 172-174. The Court declined to order *automatic* reversal in such circumstances. *Id.* at 174. Instead it held, as it had in *Sullivan*, that where the conflict was undisclosed, the defendant seeking relief had to prove the conflict *adversely affected* counsel's representation. Such "adverse effect" required more than a theoretical possibility of conflict, but less than *Strickland* prejudice. *See id.* at 172-174.

In so holding, the Court emphasized *Sullivan*'s requirement of *active representation* of conflicting interests, and its stress on "the high probability of prejudice arising from multiple concurrent representations, and the difficulty of proving that prejudice." *Id.* at 175. The dividing line was not between joint representation of codefendants versus representation in other cases, but instead between "*concurrent* representation and prior representation." *Id.* (emphasis added). The *Mickens* Court upheld the *Sullivan* "adverse effect" rule for concurrent representations, and held that its application to successive

7

representation cases remained an "open question." *Id.* at 176.

This Circuit has stated that *Mickens* "cautioned that [the Supreme Court's] own conflict jurisprudence had not yet reached beyond joint representation." *Earp v. Ornoski*, 431 F.3d 1158, 1184 (9th Cir. 2005). But the passage of *Mickens* that *Earp* quoted referred not to "joint representation," but to "multiple concurrent representation": "Both *Sullivan* itself [ ] and *Holloway* [ ] stressed the high probability of prejudice arising from multiple concurrent representation, and the difficulty of proving that prejudice." *Mickens*, 535 U.S. at 175, *quoted in Earp*, 431 F.3d at 1184. *Earp*'s slip has become transformed, through successive quotation in *Foote v. Del Papa*, 492 F.3d 1026, 1030 (9th Cir. 2007), and *Walter-Eze*, 869 F.3d at 905, into the idea that "*Mickens* 'explicitly concluded that [*Sullivan*] was limited to joint representation,'" *id.*, when in fact it was limited to "multiple concurrent representation." *See Noguera v. Davis*, 5 F.4th 1020, 1035-1036 (9th Cir. 2021) (correctly stating the *Mickens* distinction was between "conflicting *concurrent* representations" and "*successive* representations"). But in any event, all of this Court's opinions agree that the extension of *Sullivan* beyond the concurrent or joint representation context remains an "open question."

8

*See, e.g.*, *id.*; *Walter-Eze*, 869 F.3d at 905.

This case involves the circumstances discussed in *Mickens*: multiple concurrent conflicting representations, though in different cases. The conflict extended over a period of more than a year, while plea negotiations and agreements overlapped among four different but similar cases. As in *Holloway*, "the evil ... is in what the advocate finds himself compelled to refrain from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process." *Holloway*, 435 U.S. at 490. That conflict exists just as much in multiple concurrent representations, even in different cases, as it does in joint representations.

## II.   Zuberi need only show *adverse effect*, not *Strickland* prejudice.

In the multiple *concurrent* representation context, the defendant need only show an "actual conflict," that is, that the conflict "adversely affected" the representation. If the conflict adversely affected counsel's performance, *Strickland* prejudice—effect on the outcome—need not be shown. *See Mickens*, 535 U.S. at 166-167; *Sullivan*, 446 U.S. at 349-350; *Walter-Eze*, 869 F.3d at 900-901.

9

Citing *Walter-Eze*, the government suggests that Zuberi must show both actual conflict, *and* prejudice under *Strickland* (that the conflict affected the trial's outcome). That is not the law. In *Walter-Eze*, this Court discussed the "actual conflict," or "adverse effect" standard applied in *Sullivan* and *Mickens*. *See* 869 F.3d at 900-901. That standard, which was satisfied in *Walter-Eze*, is discussed above at Subsection I(a) and in Appellant's Opening Brief at 13-14, and is satisfied here.

*Walter-Eze* then went on to analyze whether that standard applied to the asserted conflict in that case: divergence between the defendant's interest in adequate trial preparation and counsel's personal interest in avoiding fees and possible sanctions. *See* 869 F.3d at 898. The *Walter-Eze* Court declined to extend the *Sullivan* rule, finding the conflict was "relegated to a single moment of the representation and resulted in a single identifiable decision that adversely affected the defendant...." *Id.* at 906. The Court contrasted that situation with joint representation cases "where every interaction with or decision made by counsel is tainted by the conflict." *Id.*

In this case, Zuberi's entire representation was "tainted by the conflict." Zuberi's conflicted counsel failed to disclose information that

10

would have affected: (1) his decision to plead, (2) his decision to withdraw his plea, and (3) his sentencing. Here, just as in joint representation, prejudice is difficult to prove. *See Mickens*, 535 U.S. at 175. As in *Holloway*, this was an actual conflict that adversely affected Zuberi's representation throughout his criminal case. Thus the interests animating both *Holloway* and *Sullivan* still apply: "To assess the impact of a conflict of interests on the attorney's options, tactics, and decisions in plea negotiations would be virtually impossible." 435 U.S. at 491 (quoted in *Walter-Eze*, 869 F.3d at 905). In that situation, once the adverse effect is shown, *Strickland* prejudice is not required—it is presumed.

### III. Zuberi was deprived of the unconflicted counsel of attorney Davis and thus denied the opportunity to make knowing and intelligent decisions at critical junctures in his case.

The government notes that Zuberi must show that attorney Davis failed to pursue an alternative course of action because of his duties of loyalty and confidentiality to Arsan. GAB-18-20. But the government misapprehends the course of action not pursued, and whether it is required that the action would have succeeded. The government argues

11

that it was unwilling to give Zuberi a deferred prosecution agreement and thus there was no adverse effect. GAB-19-20. But the adverse effect is not the fact that Zuberi did not receive the same deal as Arsan. Instead, it is that Davis's advice to Zuberi and his advocacy (pre-plea, post-plea, and at sentencing) were cabined because of his duty to Arsan. Zuberi had a right to determine what course to pursue: to plead or not, to withdraw his plea or not, to take his case to trial or not. Davis, protecting his other concurrent client's interest, denied Zuberi the ability to make these decisions for himself.

Unlike in *McClure*, where conflicted counsel's actions arguably *protected* his client from further harm, here the refusal to reveal this material information in no way advanced Zuberi's interests. *See* 323 F.3d at 1248 (evaluating conflict claim where counsel believed he was likely saving client from additional charges and further harm).

Additionally, at sentencing, Davis did not answer the prosecutor's cry to send "a message" to others by imposing a decade-long guidelines sentence, *because of* Davis's conflicting duty to Arsan. 2-ER-188 & 193. This general deterrence argument swayed the district court—the court cited it repeatedly to support Zuberi's 144-month sentence. *See* 1-ER-40-

12

41. Zuberi need not show this actually affected the outcome of his sentence; it is enough that Davis left the argument unrebutted because of his conflicting duty to his other simultaneously represented client. The Sixth Amendment does not countenance that silence.

## CONCLUSION

Because Zuberi's Sixth Amendment right to conflict-free counsel was violated, his pleas should be set aside and his convictions vacated.[4]

Respectfully submitted,

| December 20, 2023 | s/ Timothy A. Scott |
|---|---|
| Dated | Timothy A. Scott |
| | Marcus S. Bourassa |
| | MCKENZIE SCOTT, PC |
| | 1350 Columbia Street, Ste. 600 |
| | San Diego, CA 92101 |
| | tscott@mckenziescott.com |
| | mbourassa@mckenziescott.com |
| | *Counsel for Appellant* |

---

[4] If this Court remands only the CDCA plea, not the SDNY plea, then under this Court's precedents it must remand to a different judge. *See* AOB-21-22. The government's response regarding remand addresses only the general standard for reassignment, not the requirement of reassignment where a multi-plea sentence is "unbundled" and the defendant seeks specific performance of the surviving plea agreement. *See id.*

13

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s) <u>21-50048; 21-50084</u>**

I am the attorney or self-represented party.

**This <u>UNSEALED</u> reply brief only contains <u>2,376</u> words,** including <u>0</u> words manually counted in any visual images, and excluding the items exempted by FRAP 32(f).

The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[X] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a). This unsealed brief, considered together with the sealed brief, exceeds the word limit for a reply brief. Co-counsel is preparing and submitting a motion to file a longer brief.

**Signature** <u>*s/ Timothy A. Scott*</u>      **Date** <u>December 20, 2023</u>

14